UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

THEDA BANKS

VERSUS

C.R. BARD, INC. AND
BARD PERIPHERAL VASCULAR, INC.

CIVIL ACTION

17-193-SDD-RLB

**RULING**

Before the Court is the *Motion in Limine to Exclude Argument and Evidence Regarding Negligence of a Third Party*[1] filed by Plaintiff Theda Banks ("Banks"). An *Opposition*[2] was filed by C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. ("Bard" or "Defendants"). For the reasons that follow, the *Motion* is granted.

I.  **BACKGROUND**

This is a products liability action that was remanded to this Court for a Plaintiff-specific trial from the multidistrict litigation captioned *In re: Bard IVC Filters Products Liability Litigation*, MDL 2641, in the United States District Court for the District of Arizona. (the "MDL").[3]

Banks brings this action for personal injuries suffered after being implanted with an Inferior Vena Cava ("IVC") filter medical device manufactured by Bard. An IVC filter is a device that is designed to filter or "catch" blood clots that travel from the lower portions of the body to the heart and lungs. On October 29, 2007, Banks was implanted with a Bard IVC filter known as the G2.[4] Banks's filter remained in place without known

---

[1] Rec. Doc. 131.
[2] Rec. Doc. 146.
[3] *See In re Bard IVC Filters Prod. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2018 WL 495188 (D. Ariz. Jan. 22, 2018).
[4] Stipulated to by parties. Rec. Doc. 106, p. 6.

1

complication until March 2016, when it failed by severely tilting, migrating downward, and perforating her IVC wall, as well as her pancreas and aorta.[5]

Banks's filter was subsequently removed via open surgery by Dr. Glen Schwartzberg.[6] Parts of the filter could not be removed and remain there at present.[7] Dr. Schwartzberg believed that a percutaneous, i.e., non-surgical removal was infeasible due to the orientation of the filter and the protrusion of several struts.[8]

Banks now moves to exclude any evidence that her medical providers caused or contributed to her injuries.

## II.    LAW AND ANALYSIS

Federal Rule of Evidence 401 provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." "Irrelevant evidence is not admissible."[9] Rule 403 provides that relevant evidence may nevertheless be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[10]

Banks seeks to exclude evidence that her medical providers "caused or contributed to her injuries in any fashion whatsoever."[11] Banks anticipates that Bard will "attempt to cast aspersions against the physician who implanted her G2 filter or the

---

[5] Rec. Doc. 95-6, p. 12.
[6] Rec. Doc. 100-14, pp. 2-3.
[7] Rec. Doc. 95-6, p. 12.
[8] Rec. Doc. 100-14, p. 2.
[9] Fed. R. Evid. 402.
[10] Fed. R. Evid. 403.
[11] Rec. Doc. 131-1, p. 3.

physicians who attempted to explant the filter but were only able to remove portions of the filter."[12]

In its *Opposition,* Bard takes no issue with the filter's implantation. With respect to retrieval, Bard seeks to admit evidence that the decision to surgically remove the filter "was unnecessary and potentially an intervening cause of Plaintiff's alleged injuries and damages."[13] Bard's expert witness, Dr. Moni Stein, will testify that Banks's physician should have at least considered a percutaneous (i.e., non-surgical) removal.[14] According to Bard, "Dr. Stein's opinions about percutaneous retrieval . . . could be used by the jury to determine that Dr. Schwartzberg or other healthcare providers proximately caused some or all of Plaintiff's injuries when they failed to pursue percutaneous removal of Plaintiff's filter."[15]

Before 1996, Louisiana law dictated that a tortfeasor was liable for the victim's related medical treatment injuries, even those caused by inappropriate treatment by a health care provider.[16] The law created "solidary liability between the tortfeasor and those guilty of medical malpractice."[17] In 1996, the legislature amended La. C.C. arts. 2323 and 2324(B), working "to abolish solidary liability among non-intentional tortfeasors and to place Louisiana in a pure comparative fault system."[18] Under current law, when a defendant alleges fault on the part of a subsequent medical treatment provider, "the fault of both [the initial tortfeasor] and the allegedly negligent health care

---

[12] *Id.*, p. 1.
[13] Rec. Doc. 146, p. 1.
[14] Rec. Doc. 146-1, p. 3.
[15] Rec. Doc. 146, p. 4.
[16] *Steptoe v. Lallie Kemp Hosp.,* 93-1359 (La. 3/21/94); 634 So.2d 331, 334-35.
[17] *Id.*
[18] *Dumas v. State Dept. of Culture, Recreation and Tourism,* 2002–0563 (La.10/15/02), 828 So.2d 530, 535.

3

providers should be determined notwithstanding the fact that the health care providers are nonparties."[19] The initial tortfeasor "must be allowed to put on evidence related to the health care provider's alleged fault as part of its defense."[20]

Here, however, Bard does not intend to introduce evidence of comparative fault on the part of Banks's treating physicians. In fact, Bard insists that it "will not offer evidence or argument that any healthcare provider fell below the standard of care . . . nor will Bard seek to have any healthcare provider added to the verdict form or have the jury apportion fault to any healthcare provider."[21] Instead, Bard seeks to show that Banks's non-negligent removal procedure constituted "an intervening act that severed Bard's liability."[22] Bard contends that the surgery was unnecessary because a less invasive removal "would have likely been possible, using tools like forceps and laser."[23]

This argument is unpersuasive. An intervening cause is an occurrence that breaks the "natural and continuous sequence" of events flowing from the original tortious act.[24] Here, there is a natural causal relationship between the initial failure of Banks's filter and Dr. Schwartzberg's decision to surgically remove it. Indeed, Bard concedes that removal of the filter was necessary. Although Bard posits that a less invasive removal procedure might have been possible, Bard does not dispute that the decision to perform a surgical removal was in keeping with the standard of care.[25] Simply put, the Court fails to discern how a non-negligent medical procedure done in direct

---

[19] *Id.* at 537.
[20] *Id.*
[21] Rec. Doc. 146, p. 5.
[22] *Id.*
[23] Rec. Doc. 146-1, p. 3.
[24] *Pickett v. RTS Helicopter*, 128 F.3d 925, 929 (5th Cir. 1997) (quoting *Graham v. Amoco Oil Co.*, 21 F.3d 643, 648 (5th Cir.1994)).
[25] Rec. Doc. 146, p. 5.

response to the filter's failure might "break" the natural sequence of events in this case. By all accounts, the surgical procedure was part of that natural sequence. Accordingly, evidence regarding a less invasive treatment option is irrelevant and excludable under Rule 402.[26] Alternatively, such evidence would simply serve to confuse the jury and is excludable under Rule 403.[27]

In sum, Bard may not admit any evidence of third-party negligence at trial. In particular, Bard may not introduce evidence or argument that Banks's removal procedure was unnecessary or that Banks's damages could have been reduced through an alternative procedure. The parties may of course refer to the removal procedure in a non-critical manner as it is relevant to the issue of damages.

### III. Conclusion

Banks's *Motion in Limine to Exclude Argument or Evidence Regarding Negligence of a Third Party*[28] is hereby GRANTED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, this day, March 23, 2023.

CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

[26] *See* Fed. R. Evid. 402.
[27] *See* Fed. R. Evid. 403.
[28] Rec. Doc. 131.